## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MANDY J. HARSHBERGER,<br>            Plaintiff | No. |
| v. | Civil Action - Law<br>(Electronically filed) |
| READING AREA COMMUNITY COLLEGE,<br>            Defendant | Jury Trial Demanded |

## **COMPLAINT**

AND NOW, TO WIT, comes Plaintiff, Mandy J. Harshberger, by and through her counsel, Solomon Z. Krevsky, Esquire and Krevsky Bowser, LLC, and files the following Complaint:

## **INTRODUCTION**

1.      Mandy J. Harshberger (hereinafter "Plaintiff" or "Harshberger") brings this action against Reading Area Community College (hereinafter "Defendant" or "RACC") for claims arising under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.*, as amended by the ADA Amendments Act of 2008 ("ADA"), the Family and Medical Leave Act of 1993, 29 U.S.C. 2601, *et seq.* ("FMLA"), the Families First Coronavirus Response Act,  116 P.L. 127, 2020 Enacted H.R. 6201, 116 Enacted H.R. 6201, 134 Stat. 178 ("FFCRA"), the Fair Labor Standards Act

("FLSA"), and the Pennsylvania Human Relations Act, 43 P.S. §951 *et seq.*

("PHRA"). Plaintiff's claim relates to Defendant's failure to accommodate her

disability ultimately resulting in the termination of Plaintiff's employment on

August 14, 2020.

2.       This is an action brought to remedy violations of Harshberger's civil rights

and to redress unlawful discriminatory and retaliatory conduct and employment

practices of Defendant RACC.

## PARTIES

3.       Harshberger is an adult individual who, at all relevant times herein, resided

in Lancaster County in the Commonwealth of Pennsylvania and was formerly

employed by Defendant.

4.       RACC is a public community college serving the greater Reading area and

Berks County, Pennsylvania with a campus located at 10 South Second Street

Reading, Berks County, Pennsylvania 19602.

5.       At all relevant times hereto, RACC was a covered employer as that term is

defined under and pursuant to the ADA, FMLA, FFCRA/FLSA, and the PHRA.

6.       At all relevant times, RACC acted through its agents, servants, apparent

agents, and/or managerial employees who, collectively, were authorized to act

and did act within the scope of authority, course of employment, and/or under

the direct control of RACC.

## JURISDICTION AND VENUE

7.     The Court has original jurisdiction over Plaintiff's ADA, FMLA, and

FFCRA/FLSA claims pursuant to 28 U.S.C. §1331.

8.      Additionally, the Court has jurisdiction over Plaintiff's PHRA claim pursuant

to 28 U.S.C. §1367.

9.     Jurisdiction over Plaintiff's claims is appropriate in that Plaintiff satisfied all

preconditions to the filing of the action by way of pursuit of administrative

remedies.  Plaintiff timely filed a Charge of Discrimination with the Pennsylvania

Human Relations Commission ("PHRC"), said Charge of Discrimination being dual

filed with the U. S. Equal Employment Opportunity Commission ("EEOC") alleging

disability discrimination and retaliation.

10.     The PHRC issued a notice of the right to bring an action on February 9,

2022, and Plaintiff sought a Notice of Right to Sue from the EEOC.

11.     Venue lies within the Eastern District of Pennsylvania pursuant to 28 U.S.C.

§1391(b) as the facts and circumstances, actions and/or omissions alleged herein

took place within this judicial district.

**UNDERLYING FACTS**

12.     Harshberger commenced employment with Defendant on or about May 16,

2016, in the joint capacity of both Director of Respiratory Care and as an

Instructor in RACC's respiratory care academic program.

13.     At all relevant times hereto, Plaintiff performed services for Defendant at

its campus located at 10 South Second Street, Reading, Berks County,

Pennsylvania.

14.     At all relevant times hereto, Defendant RACC employed at least 50

employees within 75 miles of its Reading, Pennsylvania campus.

15.     Plaintiff was fully qualified to perform all duties and responsibilities

associated with her position and carried out such duties in a satisfactory manner.

16.     In her position Director of Respiratory Care, Plaintiff Harshberger provided

effective leadership and oversight of the respiratory care academic program at

RACC, which included but was not limited to, performing administrative duties,

fiscal planning, program development, maintenance of respiratory care program

accreditation, and supervision of faculty members, adjunct professors, and

student assistants.  Additionally, as an Instructor Harshberger effectively tended

to educational responsibilities which included teaching classroom courses,

curriculum development, mentoring students, and monitoring student performance.

17.     In her various positions, Harshberger did _not_ have clinical assignment duties or responsibilities.

18.     Among others, Plaintiff Harshberger supervised Wendy Dunlop, RACC's Director of Clinical Education.  Upon information and belief, it was Ms. Dunlop who supervised the clinical adjunct professors who actually performed the off-campus clinical assignment work.

19.     At all relevant times hereto, Harshberger suffered with Rheumatoid Arthritis which is an is an autoimmune disease (hereinafter "Medical Impairment").

20.     Plaintiff's Medical Impairment required and continues to require treatment with an immunosuppressive medication which is monitored by her rheumatologist, Shirley A. Albano-Aluquin, M.D.

21.     Plaintiff's Medical Impairment is permanent and/or longstanding in duration.

22.     Plaintiff's Medical Impairment substantially limits one or more major life activities and/or major bodily functions.

23.     Accordingly, Plaintiff's Medical Impairment constitutes a disability ("Disability") as that term is defined under and pursuant to the ADA and PHRA.

24.     Notwithstanding her Disability, Plaintiff was fully capable of performing essential job functions with or without reasonable accommodations.

25.     At all relevant times hereto, Defendant RACC knew that Plaintiff had been diagnosed with a Disability and that she experienced unpredictable and, at times, debilitating flare-ups of symptoms associated with her Disability.

26.     In or about January 2020, Plaintiff experienced the onset of symptoms relating to her Disability that were temporarily and intermittently incapacitating.

27.     Plaintiff's Disability also constituted a "serious health condition" as that term is defined under and pursuant to the FMLA and its regulations.

28.     Accordingly, Plaintiff submitted a request for intermittent medical leave pursuant to FMLA.

29.     Defendant RACC granted Plaintiff's request for intermittent FMLA leave.

30.     Plaintiff's request for intermittent medical leave pursuant to FMLA also constituted a request for workplace accommodation necessitated by her Disability pursuant to the ADA.

31.     On January 27, 2020, Plaintiff commenced an intermittent FMLA leave of absence of approximately one week.

32.     Plaintiff returned to work following her FMLA/ADA medical leave of
absence and continued to perform the essential functions of her jobs.

33.     On March 6, 2020, the global pandemic spread of COVID-19 caused the
Commonwealth of Pennsylvania to declare a state of emergency.

34.     Plaintiff's Medical Impairments have been classified by the Center for
Disease Control ("CDC") as an underlying medical condition that cause individuals
to have an increased risk for severe complications from COVID-19.

35.     At all relevant times hereto, the CDC instructed individuals to consider
avoiding activities when taking protective measures against COVID-19 may have
been difficult, such as activities where social distancing could not be maintained.

36.     At all relevant times hereto, the CDC recommended that everyone take
steps to prevent getting and spreading COVID-19 to protect themselves, their
communities, and people who were at increased risk of severe complications,
including Plaintiff.

37.     On or about March 13, 2020, as a result of the global pandemic spread of
COVID-19, Defendant RACC transitioned to remote instruction.

38.     Accordingly, on or about March 13, 2020, Plaintiff began to perform the
duties and responsibilities of her work remotely ("Telework").

39.    On March 18, 2020, the Families First Coronavirus Act ("FFCRA") was signed

into law and was applicable between April 1, 2020 and December 31, 2020.

40.    Among other things, the FFCRA required covered employers to extend

family and medical leave to employees for specific reasons related to COVID-19.

41.    On April 1, 2020, the Commonwealth of Pennsylvania issued a Stay-at-

Home Order ("Order"), in an effort to retard the spread of COVID-19 and protect

those individuals considered to have an increased risk for severe complications

from COVID-19.

42.    The Order remained in effect until April 30, 2020.  Thereafter, the

Commonwealth moved through various phases of stay-at-home and business

closure orders as directed by the Pennsylvania Department of Health.

43.    Upon information and belief, Berks County went to "green" phase on June

26, 2020, resulting in the easing of restrictions relating to the stay-at-home and

business closure orders directed by the Pennsylvania Department of Health.

44.    On or about June 24, 2020, Defendant announced that it intended to

resume on-campus instruction for the Fall 2020 semester.

45.    In connection thereto,  Defendant required certain employees classified as

"exempt" under the FLSA to return to work on-campus by July 7, 2020.

46.     Plaintiff was one of the employees Defendant required to work on-campus by July 7, 2020.

47.     On or about June 24, 2020, Defendant instructed employees to contact Delores Peterson ("Peterson"), Defendant's Vice President of Fiscal and Human Resources, if there was a need to request an exception to the July 7, 2020, return to on-campus work mandate.

48.     On July 2, 2020, Plaintiff met via Zoom with Peterson to request a temporary extension of Telework due to Plaintiff's Disability and, in particular, her status as an individual at increased risk for severe complications from COVID-19 as a result of her Disability.

49.     Plaintiff's request for a temporary exception to Defendant's return to on-campus work mandate was simultaneously a request for a reasonable accommodation under the ADA and PHRA.

50.     Peterson requested a medical note to support Plaintiff's request for disability accommodation.

51.     Plaintiff provided to Peterson the requested medical note dated July 9, 2020.

52.     The medical note explained, among other things, (a) that Plaintiff's Disability is an autoimmune illness that requires treatment with

immunosuppressive medications, (b) that patients treated with immunosuppressive medications are especially vulnerable to infection, (c) that Plaintiff must take precautions to avoid exposure to COVID-19, and (d) that Plaintiff be permitted to continue to Telework for the months of July through October 2020.

53.     On or about July 15, 2020, Peterson approved Plaintiff's Telework accommodation request.

54.     On August 6, 2020, RACC alleged various performance deficiencies and imposed upon Plaintiff a Performance Improvement Plan ("PIP").

55.     On August 10, 2020, RACC directed Plaintiff to return to work on-campus three days per week commencing August 17, 2020.

56.     On August 11, 2020, Plaintiff sent an email to Defendant (a) to advise that her son had been tested for COVID-19, (b) that Plaintiff had been instructed to self-quarantine by a medical professional, and (c) to renew and seek clarification on the status of her Telework accommodation.

57.     In an email dated August 11, 2020, Peterson informed Plaintiff that Plaintiff "will not be coming to campus" due to her son's COVID-19 illness and her need to quarantine.

58.     Further, Peterson instructed Plaintiff to use FMLA leave on the three days per week she could not work on-campus, but that Plaintiff could Telework the remaining two days per week.

59.     In an email dated August 12, 2020, Peterson provided notice to Plaintiff that the Telework accommodation previously approval for the months of July through October 2020 was revoked.

60.     In an email to Peterson dated August 13, 2020, Plaintiff inquired as to why she was not "involved in an interactive process to evaluate [her] accommodation to see if we could find another accommodation that would be less than 3 days per week given that [her] prior accommodation allowed for telework 5 days a week and no change occurred in [her] medical condition?"

61.     The disability accommodation requests by Plaintiff would not have imposed upon Defendant an undue burden.

62.     Nevertheless, the next day, August 14, 2020, Plaintiff's employment was terminated.

63.     Defendant RACC possessed no good faith, legitimate business justification to terminate Plaintiff's employment.

64.     The purported basis for RACC to terminate Plaintiff's employment is invalid, untrue, and a pretext for unlawful discrimination and retaliation.

65.     The termination of Plaintiff's employment constitutes adverse employment

action.


**COUNT I**
**AMERICANS WITH DISABILITY ACT OF 1990**
**42 U.S.C. §12101 et seq, as amended**
**Failure to Accommodate Disability**
***Mandy J. Harshberger v. Reading Area Community College***

66.     Plaintiff repeats and repleads Paragraphs 1 through 65 of this Complaint, as

more fully set forth at length, and incorporates herein by reference.

67.     Plaintiff is a member of a class of individuals protected against

discrimination on account of a disability, a record of disability, and/or the

perception that Plaintiff is an individual with a disability.

68.     Plaintiff requested reasonable accommodations necessitated on account of

her Disability, as more fully described above.

69.     Defendant knew of Plaintiff's Disability because Plaintiff informed

Defendant that she suffered with a Disability when she made requests for

accommodations.

70.     Defendant granted Plaintiff's disability accommodation request for a brief

medical leave of absence commencing in January 2020.

71.     Defendant initially granted Plaintiff's disability accommodation request to continue Telework through October 2020, but later revoked its approval of same on August 12, 2020.

72.     Defendant RACC revoked the approval of its grant of Plaintiff's disability accommodation request to continue Telework through October 2020 without engaging Plaintiff in the interactive process required to identify disability alternate accommodations that would permit Plaintiff to perform the essential functions of her job.

73.     The reasonable accommodation requested by Plaintiff to continue Telework from July to October 2020 would not have altered in any way Plaintiff's essential job duties.  Said accommodations changed only the location that those essential job duties would be performed.

74.     The reasonable accommodation requested by Plaintiff to continue Telework from July to October 2020 did not and would not have imposed upon Defendant an undue burden.

75.     Had Defendant not revoked its grant of the disability accommodation at issue, Plaintiff would have been able to perform the essential functions of her job.

76.   Defendant possessed no legitimate business justification for its revocation/refusal to grant Plaintiff's request for disability-based workplace accommodation to continue Telework from July to October 2020.

77.   Defendant possessed no legitimate business justification for its failure or refusal to engage in the interactive process with Plaintiff.

78.   Defendant violated the ADA by failing to participate in the interactive process in good faith.  *See Taylor v. Phoenixville School District*, 184 F.3d 296 (3d Cir. 1999).

79.   By failing or refusing to accommodate Plaintiff's disability that would have permitted Plaintiff to perform the essential functions of her job, Defendant violated the ADA.

80.   The failure/refusal of Defendant to engage in the interactive process with Plaintiff in good faith was a direct and proximate cause of the termination of Plaintiff's employment with Defendant.

81.   Defendant's intentional failure to accommodate, as more fully described above, resulted in adverse employment action.

82.   As a direct and proximate result of Defendant's intentional failure to accommodate, Plaintiff is entitled to back pay and benefits together with interest thereon, and claim is made therefor.

83.     As a direct and proximate result of Defendant's intentional failure to accommodate, Plaintiff is entitled to reinstatement or front pay and benefits should reinstatement prove impractical, and claim is made therefor.

84.     As a direct and proximate result of Defendant's intentional failure to accommodate, Plaintiff has suffered and will continue to suffer, extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of personal life and loss of enjoyment in life, and claim is made therefor.

85.     Because the intentional failure to accommodate directed to Plaintiff, as more fully described above, was undertaken by Defendant in derogation of Plaintiff's federally protected rights, Plaintiff is entitled to punitive damages and claim is made therefor.

86.     As a direct and proximate result of Defendant's intentional failure to accommodate, Plaintiff is entitled to recover her costs and attorney fees and claim is made therefor.

**COUNT II**
**AMERICANS WITH DISABILITY ACT OF 1990**
**42 U.S.C. §12101 et seq, as amended**
**Discriminatory Discharge**
*Mandy J. Harshberger v. Reading Area Community College*

87.     Plaintiff repeats and repleads Paragraphs 1 through 86 of this Complaint, as more fully set forth at length, and incorporates herein by reference.

88.     Plaintiff is a member of a class of individuals protected against

discrimination in the workplace on account of a disability, a record of disability,

and/or the perception that Plaintiff is an individual with a disability.

89.     Plaintiff has been subjected to discrimination and disparate treatment on

the basis of her disability, her record of disability, or Defendant's regard of her as

an individual with a disability in a manner affecting the terms and conditions of

her employment and resulting in the termination Plaintiff's employment with

Defendant effective August 14, 2020.

90.     Defendant knew that Plaintiff suffered with a Disability and that she

requested accommodations on account of same.

91.     Had Defendant granted Plaintiff's requests for reasonable

accommodations, Plaintiff would have been able to perform essential job

functions.

92.     However, because Defendant knew or suspected that the seriousness of

Plaintiff's Disability might require future medical leaves of absence and/or other

reasonable accommodations, Defendant chose to terminate her employment

rather than accommodate Plaintiff's disability.

93.     Defendant possessed no legitimate business justification for terminating

Plaintiff's employment effective August 14, 2020.

94.     Any purported basis for terminating Plaintiff's employment is a pretext for unlawful discrimination on the basis of Plaintiff's Disability, her record of suffering from a Disability, or Defendant's perception of Plaintiff as an individual with a disability.

95.     Upon information and belief, non-disabled employees similarly situated to Plaintiff who have requested accommodations similar to those requested by Plaintiff were not terminated from employment with Defendant.

96.     Plaintiff's position was replaced by and/or her job duties reassigned to an individual outside of Plaintiff's protected class.

97.     Defendant subjected Plaintiff to discrimination and disparate treatment on the basis of her disability, her record of disability, or Defendant's regard of her as an individual with a disability.

98.     Defendant's discrimination and disparate treatment, as more fully described above, includes but is not limited to the termination of Plaintiff's employment.

99.     Defendant's unlawful discrimination and disparate treatment, as more fully described above, resulted in adverse employment action.

100.    The intentional disability discrimination and disparate treatment, as more fully described above, resulted in tangible job detriments and/or adverse

employment action including but not limited to lost wages and benefits and the unlawful discharge of Plaintiff's employment.

101.   As a direct and proximate result of Defendant's intentional disability discrimination and disparate treatment, Plaintiff is entitled to recover back pay and benefits together with interest thereon, and claim is made therefor.

102.   As a direct and proximate result of Defendant's intentional disability discrimination and disparate treatment, Plaintiff is entitled to reinstatement or front pay and benefits should reinstatement prove impractical, and claim is made therefor.

103.   As a direct and proximate result of Defendant's intentional disability discrimination and disparate treatment, Plaintiff has suffered and will continue to suffer, extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of personal life and loss of enjoyment in life, and claim is made therefor.

104.   Because the intentional discrimination and disparate treatment directed to Plaintiff, as more fully described above, was undertaken by Defendant in derogation of Plaintiff's federally protected rights, Plaintiff is entitled to punitive damages and claim is made therefor.

105.   As a direct and proximate result of Defendant's intentional disability

discrimination and disparate treatment, Plaintiff is entitled to recover her costs

and attorney fees and claim is made therefor.

**COUNT III**
**AMERICANS WITH DISABILITY ACT OF 1990**
**42 U.S.C. §12101 et seq, as amended**
**Retaliatory Discharge**
***Mandy J. Harshberger v. Reading Area Community College***

106.   Plaintiff repeats and repleads Paragraphs 1 through 105 of this Complaint,

as more fully set forth at length and incorporates herein by reference.

107.   Plaintiff requested disability accommodations under and pursuant to the

ADA.

108.   Plaintiff's request for a disability accommodation, as more fully described

above, constituted protected activity under and pursuant to the ADA ("Protected

Activity").

109.   On or about July 15, 2020, Defendant RACC, by and through Peterson,

granted Plaintiff's disability accommodations request to telework from July

through October 2020.

110.   On August 6, 2020, Defendant imposed a PIP on Plaintiff.

111.   On August 10, 2020, RACC unilaterally required all exempt employees to

return to on-campus work three days per week which included the Plaintiff.

112.   On August 11, 2020, Plaintiff sent an email to Defendant (a) to advise that her son had been tested for COVID-19, (b) that Plaintiff had been instructed to self-quarantine by a medical professional, and (c) to renew and seek clarification on the status of her Telework accommodation

113.   Very shortly thereafter, RACC rescinded its approval of Plaintiff's disability accommodation to continue Telework through October 2020.

114.   RACC rescinded its approval of Plaintiff's disability accommodation to continue Telework through October 2020 without participating in the interactive process.

115.   Defendant RACC retaliated against Plaintiff as a result of her Protected Activity including but not limited to the following:

a.   Failing to adhere to policies concerning equal employment opportunity.

b.   Failing to comply with policies prohibiting disability discrimination in the workplace.

c.   Revoking its approval of Plaintiff's disability accommodation request.

d.   Failing to comply with its obligation to participate in good faith in the interactive process to identify disability accommodations that would permit an employee with a disability to perform essential job functions.

e.   Subjecting Plaintiff's work performance to heightened and unreasonable scrutiny.

f.  Falsely asserting violations of Defendant's policies.

g.  Falsely asserting deficiencies in Plaintiff's performance.

h.  Imposing upon Plaintiff a PIP on August 6, 2020.

i.  Terminating Plaintiff's employment without cause effective August 14, 2020.

116.  Defendant possessed no legitimate business justification for revoking its approval of Plaintiff's disability accommodation request to continue Telework through October 2020.

117.  Defendant possessed no legitimate business justification for failing to comply with its obligation to participate in good faith in the interactive process.

118.  Defendant possessed no legitimate business justification for imposing upon Plaintiff a PIP on August 6, 2020.

119.  Defendant possessed no legitimate business justification for terminating Plaintiff's employment effective August 14, 2020.

120.  Any purported basis for the adverse actions described herein including, but not but limited to, the termination of Plaintiff's employment is a pretext for unlawful retaliation in response to Plaintiff's Protected Activity.

121.  Defendant subjected Plaintiff to retaliation on the basis of her Protected Activity and, but for Plaintiff's Protected Activity Defendant would not have

revoked its accommodation request, asserted false allegations of performance

deficiencies and/or violations company policy, imposed a PIP, or terminated

Plaintiff's employment.

122.   Defendant's retaliation, as more fully described above, includes but is not

limited to the termination of Plaintiff's employment effective August 14, 2020.

123.   Upon information and belief, Plaintiff's position was replaced by and/or her

job duties reassigned to an individual or individuals who had not engaged in

protected activity under the ADA.

124.   Defendant willfully violated the ADA when it retaliated against Plaintiff

because of her protected activities, as more fully described above.

125.   The intentional retaliation, as more fully described above, resulted in

tangible job detriments and/or adverse employment action including but not

limited to lost wages and the unlawful discharge of Plaintiff's employment.

126.   As a direct and proximate result of Defendant's intentional retaliation,

Plaintiff is entitled to back pay and benefits together with interest thereon, and

claim is made therefor.

127.   As a direct and proximate result of Defendant's intentional retaliation,

Plaintiff is entitled to reinstatement or front pay and benefits should

reinstatement prove impractical, and claim is made therefor.

128.   As a direct and proximate result of Defendant's intentional retaliation, Plaintiff has suffered and will continue to suffer, extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of personal life and loss of enjoyment in life, and claim is made therefor.

129.   Because the intentional retaliation directed to Plaintiff, as more fully described above, was undertaken by Defendant in derogation of Plaintiff's federally protected rights, Plaintiff is entitled to punitive damages and claim is made therefor.

130.   As a direct and proximate result of Defendant's intentional retaliation, Plaintiff is entitled to recover her costs and attorney fees and claim is made therefor.

**COUNT IV**
**PENNSYLVANIA HUMAN RELATIONS ACT**
**43 P.S. §§951 et seq.**
**Discrimination and Retaliation**
***Mandy J. Harshberger v. Reading Area Community College***

131.   Plaintiff repeats and repleads Paragraphs 1 through 130 of this Complaint as more fully set forth at length and incorporates herein by reference.

132.   The acts and/or omissions identified above and incorporated herein by reference violate one or more provisions the Pennsylvania Human Relations Act, 43 P.S. §951 et seq.

133.   As a direct and proximate result thereof, Plaintiff has sustained damages as more fully described above and incorporated hereto by reference including, but not limited to, loss of employment, lost wages and benefits, future lost wages and benefits, harm to earning and earning capacity, extreme mental anguish, significant mental health injuries, personal humiliation, painful embarrassment, disruption of personal life and loss of enjoyment in life, and claim is made therefor.

134.   Plaintiff is further entitled to recover reasonable attorney fees and litigation expenses pursuant to the Pennsylvania Human Relations Act, and claim is made therefor

**COUNT V**
**FAMILY AND MEDICAL LEAVE ACT**
**29 U.S.C. §2601 et seq.**
**Interference**
***Mandy J. Harshberger v. Reading Area Community College***

135.   Plaintiff repeats and repleads Paragraphs 1 through 134 of this Complaint and incorporates herein by reference as though fully set forth at length.

136.   At all relevant times hereto, RACC employed 50 or more employees within 75 miles of Plaintiff's worksite for a period of 20 or more calendar work weeks.

137.   At all times material to her Complaint, RACC was a "covered employer" within the meaning of the FMLA.

138.   At all relevant times hereto, Plaintiff had been employed by RACC for at least 12 months and had been employed for at least 1,250 hours of service during the 12-month period immediately preceding August 11, 2020.

139.   On August 11, 2020, Plaintiff informed Defendant, among other things, that her son tested for COVID-19 and that Plaintiff had been instructed to self-quarantine by a medical professional.

140.   Plaintiff's son's COVID-19 diagnosis is a "serious health condition" as that term is defined under and pursuant to the FMLA and associated regulations.

141.   At all times material to this Complaint, Plaintiff was an "eligible employee" within the meaning of the FMLA, 29 U.S.C. §2611(2).

142.   Defendant RACC knew or should have known that Plaintiff's August 11, 2020 email informing Defendant, among other things, that her son tested positive for COVID-19 and that she had been instructed to self-quarantine by a medical professional was a request for FMLA leave.

143.   However, Defendant RACC did not provide Plaintiff required FMLA notices with respect to Plaintiff's request for leave from work in order to care for her son's serious health condition.

144.   Defendant RACC did not grant Plaintiff FMLA leave with respect to Plaintiff's request for leave from work in order to care for her son's serious health condition.

145.   Instead, Defendant RACC terminated Plaintiff's employment three days later.

146.   Defendant willfully violated 29 U.S.C. §2615(a)(1) of the FMLA in that it interfered with, restrained and/or denied the exercise or attempt of exercise of Plaintiff's rights under the FMLA.

147.   Defendant's acts, omissions, and conduct as more fully described above, were knowing and willful.

148.   As a result of Defendant's violations of the FMLA, as more fully described above, Plaintiff is entitled to back pay and wages together with interest thereon pursuant to the FMLA and claim is made therefor.

149.   As a result of Defendant's violations of the FMLA, as more fully described above, Plaintiff is entitled to be reinstated to her position or to recover front pay and benefits pursuant to the FMLA and claim is made therefor.

150.   Defendant's acts and omissions, as more fully described above, were

undertaken in bad faith and without a reasonable basis thereby rendering

Defendant liable for liquidated damages pursuant to the FMLA, and claim is made

therefor.

151.   Plaintiff was further entitled to recover her attorney fees, expert witness

fees, and other costs related to the instant matter pursuant to the FMLA, and

claim is made therefor.

### COUNT VI
### FAMILY AND MEDICAL LEAVE ACT
### 29 U.S.C. §2601 ET SEQ.
### Retaliation
### *Mandy J. Harshberger v. Reading Area Community College*

152.   Plaintiff repeats and repleads Paragraphs 1 through 151 of this Complaint

and incorporates herein by reference as though fully set forth at length.

153.   During her tenure of employment with Defendant, Plaintiff exercised her

rights under the FMLA and/or attempted to exercise those rights.

154.   The FMLA and regulations promulgated thereunder prevent an employer

from discriminating against employees who have exercised rights under the FMLA

and/or attempted to exercise rights under the FMLA, 29 U.S.C. §2615(a)(2); 29

C.F.R. §825.220(c); 29 C.F.R. §825.215.

155.   Defendants willfully violated 29 U.S.C. §2615(a)(2) of the FMLA in that it discharged, discriminated, and/or retaliated against Plaintiff as a result of her exercise of FMLA rights and/or attempt to exercise FMLA rights including but not limited to terminating Plaintiff's employment without cause on August 14, 2020.

156.   Defendant's acts, omissions and conduct, as more fully described above, resulting in the termination of Plaintiff's employment, were knowing and willful.

157.   As a result of Defendant's violations of the FMLA, as more fully described above, Plaintiff is entitled to back pay and wages together with interest thereon pursuant to the FMLA, and claim is made therefor.

158.   As a result of Defendant's violations of the FMLA, as more fully described above, Plaintiff is entitled to be reinstated to her position or to recover front pay and benefits pursuant to the FMLA, and claim is made therefor.

159.   Defendant's acts and omissions, as more fully described above, were performed in bad faith and without a reasonable basis thereby rendering Defendants liable for liquidated damages pursuant to the FMLA, and claim is made therefor.

160.   Plaintiff is further entitled to recover her attorney fees, expert witness fees, and other costs related to the instant matter pursuant to the FMLA, and claim is made therefor.

**COUNT VI**
**FAMILIES FIRST CORONAVIRUS RESPONSE ACT &**
**THE FAIR LABOR STANDARDS ACT**
**Discrimination and Retaliation – Termination of Employment**
*Mandy J. Harshberger v. Reading Area Community College*

161.    Plaintiff repeats and repleads Paragraphs 1 through 160 of this Complaint and incorporates herein by reference as though fully set forth at length.

162.    Effective April 1, 2020, the FFCRA provided for up to 80 hours of paid sick time to full-time employees who are unable to work or telework because the employee is quarantined pursuant to the advice of a health care provider through the Emergency Paid Sick Leave Act. FFCRA §§5102(a) and (b)(2)(A).

163.    The FFCRA expired on December 31, 2020. FFCRA §5109.

164.    The FFCRA has expressly identified that enforcement of and all penalties arising from violations of the Emergency Paid Sick Leave Act shall be governed by relevant sections of the FLSA, as set forth in more detail below.

165.    Defendant is a covered employer which "includes any public agency as defined by section 3(x) of the Fair Labor Standards Act of 1938 (29 U.S.C. 203(x)." FFCRA §5110(2)(B)(i)(III).

166.    Plaintiff was an employee as defined by Section 3(e) of the FLSA (29 U.S.C. § 203(e)). FFCRA §5110(1)(A)(i).

167.   Plaintiff was an eligible employee who is unable to work or telework due to the need for leave because the employee was advised to self-quarantine due to concerns related to COVID-19 and was caring for an individual who is subject to an order to quarantine related to COVID-19. FFCRA §5102(a)(2),(4).

168.   Defendant knew that Plaintiff was an eligible employee within the meaning of the FLSA and the FFCRA.

169.   Plaintiff was eligible for 80 hours of paid sick leave from in or about August 11, 2020, due to being unable to work (1) due to caring for her son who contracted COVID-19 and (2) due to an order by the medical professional to self-quarantine due to exposure to COVID-19. FFCRA §5102(b)(2)(A).

170.   It is unlawful for any employer to discharge, discipline, or in any other manner discriminate against any employee who exercises her rights to "take leave in accordance with this Act." FFCRA §5104.

171.   "An employer who willfully violates section 5104 shall . . . be considered to be in violation of section 15(a)(3) of the Fair Labor Standards Act of 1938 (29 U.S.C. § 215(a)(3))." FFCRA §5105(b)(1).

172.   Additionally, an employer who in any way disciplines, discriminates or retaliates against, and/or discharges an employee in violation of this Act is subject

to the penalties described in sections 16 and 17 of the FLSA (29 U.S.C. § 216, 217) with respect to such violation. FFCRA §5105(b)(2).

173.   Penalties under sections 16 and 17 of the FLSA include, but are not limited to, lost wages, an equivalent amount of liquidated damages, and attorney's fees and costs and claim is made therefor. See FLSA, 29 U.S.C. § 216; 217.

174.   Defendant willfully:

   a.    failed to clearly inform Plaintiff of her rights pursuant to the Emergency Paid Sick Leave Act under the FFCRA;

   b.    discouraged her from filing for paid sick leave under the FFCRA for any day she was unable to work; and

   c.    terminated her in retaliation for her request for emergency paid sick leave pursuant to the FFCRA/FLSA.

175.   These actions as aforesaid constitute violations of the FFCRA and the FLSA

**COUNT VII**
**FAMILIES FIRST CORONAVIRUS RESPONSE ACT &**
**THE FAIR LABOR STANDARDS ACT**
**Discrimination or Retaliation -Failure to Pay Wages**
***Mandy J. Harshberger v. Reading Area Community College***

176.   Plaintiff repeats and repleads Paragraphs 1 through 175 of this Complaint and incorporates herein by reference as though fully set forth at length.

177.   Defendant was required to pay Plaintiff's regular rate of pay up for a period

of up to 10 workdays pursuant to FFCRA's Emergency Paid Sick Leave Act. FFCRA

§5110(5)(A)(ii)(I).

178.   An employer who fails to pay an employee's wage under the FFCRA is

"considered to have failed to pay minimum wages in violation of section 6 of the

FLSA (29 U.S.C. § 206)." FFCRA §5105(a)(1).

179.   Defendant failed to pay Plaintiff any of the required amounts under

FFCRA's Emergency Sick Leave Act.

180.    As a result of Defendant's willful failure to pay Plaintiff the aforesaid

 compensation due her, Defendant violated the FFCRA and the FLSA and caused

 Plaintiff to suffer damages in the form of unpaid wages.

181.   It is unlawful for any employer to discharge, discipline, or in any other

manner discriminate against any employee who exercises her rights to "take leave

in accordance with this Act." FFCRA §5104.

182.   "An employer who willfully violates section 5104 shall . . . be considered to

be in violation of section 15(a)(3) of the Fair Labor Standards Act of 1938 (29

U.S.C. § 215(a)(3))." FFCRA §5105(b)(1).

183.   Additionally, an employer who in any way disciplines, discriminates or

retaliates against, and/or discharges an employee in violation of this Act is subject

to the penalties described in sections 16 and 17 of the FLSA (29 U.S.C. § 216, 217) with respect to such violation, and claim is made therefore. FFCRA §5105(b)(2).

184.   Penalties under sections 16 and 17 of the FLSA include, but are not limited to, lost wages, an equivalent amount of liquidated damages, and attorney's fees and costs, and claim is made therefor.

185.   Defendant willfully terminated her in retaliation her request for emergency paid sick leave pursuant to the FFCRA/FLSA.

186.   Defendant violated the FFCRA/FMLA by:

a.    Failing to pay Plaintiff wages due to her under the FFCRA;

b.   terminating Plaintiff for requesting and/or exercising her FFCRA rights;

c.   considering Plaintiff's FFCRA leave needs in making the decision to terminate her;

d.   failing to clearly inform Plaintiff of her individualized FFCRA rights;

e.   terminating Plaintiff to intimidate other employees from taking FFCRA leave in the future; and

f.   making negative comments and/or taking actions towards Plaintiff that would dissuade a reasonable person from exercising her rights under the FFCRA.

187.   These actions as aforesaid constitute violations of the FFCRA and the FLSA.


WHEREFORE, Plaintiff Many J. Harshberger respectfully requests this

Honorable Court to enter judgment in her favor and against Defendant for:

a.      Back pay and benefits;

b.      Front pay and benefits should reinstatement prove unfeasible;

c.      Statutory prejudgment interest;

d.      Liquidated dames under FMLA and FFCRA

e.      Emotional distress and other compensatory and incidental damages

under ADA and the PHRA;

f.      Punitive damages under the ADA;

g.      Reasonable attorney fees and costs;

h.      An Order prohibiting Defendant, its officers, successors and assigns,

and all persons in active concert or participation with it from engaging in

unlawful disability and/or age discrimination, disparate treatment,

discharge, and any other employment practice which discriminates on

account of age, disability, a record of disability, and/or the perception of

such a disability;

i.      An Order requiring Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for workers and which eradicate the effects of past and present unlawful employment practices;

j.      An Order requiring Defendant to institute and carry out a complaint procedure which encourages employees to come forward with complaints regarding violations of its policies against unlawful employment practices;

k.      An Order requiring Defendant to institute and carry out a training program which shall promote supervisor accountability, imposing on all managers and supervisory personnel a duty to actively monitor the work area to ensure compliance with policies on non-discrimination, and requiring all managers and supervisors to report any incidents and/or complaints of discrimination and/or retaliation of which they become aware to the department charged with handling such complaints; and

l.      Any other relief that this Court deems just and equitable.

Respectfully submitted,

KREVSKY BOWSER LLC

Dated:  08/10/2022                    By:  /s/Solomon Z. Krevsky
                                           Solomon Z. Krevsky (PA #72719)
                                           *skrevksy@krevksybowser.com*
                                           Deborah Ann Gearhart (PA #330772)
                                           *dgearhart@krevskybowser.com*
                                           20 Erford Road, Suite 300A
                                           Lemoyne, PA 17043
                                           717.731.8600
                                           717.283.0955 (fax)
                                           *Counsel for Plaintiff*